

## AGREEMENT FOR CONSULTING SERVICES

This Agreement for Consulting Services ("Agreement") is made and entered into as of the date last executed below, ("Effective Date"), by and between Advanced Risk Managers ("ARM), having a principal place of business at 298 4th Ave., #398, San Francisco, CA 94118, and the entity listed below ("Company").

Legal Name of Contracting Company: Equinox Management Group, Inc.
Name and Title of Company Representative: Norbert Phillips, Claims Account Manager
Address: 800 Kinderkamack Road #302, Oradell, New Jersey 07649
Telephone: (201) 261-8525        Email: nphillip@eqmgmt.com
Advanced Risk Managers, LLC ("ARM") and Company agree as follows:

1. Services: From time to time, Company may request that ARM perform Services (as defined herein). For each assignment, the parties shall draft a Description of Services, in the form that is attached as Exhibit A, that describes the services that ARM will perform and the items that ARM will deliver (the "Services"); the schedule or duration of the Services; and the fees that Company will pay in return. The parties shall execute the final version of the Description of Services. Upon the execution by both parties, the Description of Services shall be deemed to be incorporated by this Agreement for Consulting Services ("Agreement"). In order for ARM to perform the services effectively, Company will provide ARM with information and tools that are listed in the Description of Services. In no event shall ARM be obligated to perform any services before a mutually agreeable Description of Services is executed.

2. Independent Contractor: ARM is an independent contractor, not an employee of Company. No employment relationship is created by this Agreement. Company agrees that ARM and its contractors and consultants are independent contractors in the performance of its duties under this Agreement. ARM will perform the Services under the general direction of Company, but ARM will determine, in ARM's sole discretion, the manner and means by which the Services are accomplished. Company has no right or authority to control the manner or means by which the Services are accomplished including hours during which services are performed. Accordingly, ARM shall be responsible for payment of all taxes, including Federal, State and local taxes arising out of ARM's activities in accordance with this Agreement.

3. Compensation:

   3.1. Invoice. ARM shall invoice the Company at the end of each calendar month in accordance with the fees and expenses as set forth in the Description of Services.

   3.2. Payment. Payment on the invoices is due and payable within Twenty (15) days of Company's receipt of the invoice. ARM invoices shall be sent to the address and individual set forth in the Description of Services.

4. Confidentiality:

   4.1. Definition of Confidential Information. "Confidential Information" as used in this Agreement shall mean any and all technical and non-technical non-public information provided from one party ("Disclosing Party") to the other party ("Receiving Party"). Company Confidential Information means information relating to Company's clients (such as name, property address, phone number, and the fact of the client relationship), research, development, products, methods of appraisal, trade secrets, business plans, customers, finances, and other data related to the business or affairs of Company.



4.2. <u>Nondisclosure and Nonuse Obligations</u>. Receiving Party shall neither use nor disclose the Confidential Information except as expressly permitted in this Agreement. ARM may use the Confidential Information solely to perform services for the benefit of Company. Receiving Party agrees that Disclosing Party shall treat all Confidential Information of Disclosing Party with the same degree of care as Receiving Party accords to Receiving Party's own Confidential Information, but in no case less than reasonable care. Receiving Party agrees that Receiving Party shall disclose Confidential Information only to those of Receiving Party's employees who need to know such information, and Receiving Party certifies that such employees have previously agreed, either as a condition of employment or in order to obtain the Confidential Information, to be bound by terms and conditions substantially similar to those terms and conditions applicable to Receiving Party under this Agreement. Disclosing Party agrees not to communicate any information to Receiving Party in violation of the rights of any third party. Receiving Party will immediately give notice to Disclosing Party of any unauthorized use or disclosure of the Confidential Information and agrees to assist Disclosing Party in remedying any such unauthorized use or disclosure of the Confidential Information.

4.3. <u>Exclusions from Nondisclosure and Nonuse Obligations</u>. Receiving Party's obligations under Section 4.2 ("Nondisclosure and Nonuse Obligations") with respect to any portion of the Confidential Information shall not apply to any such portion which Receiving Party can demonstrate: (a) was in the public domain at or subsequent to the time such portion was communicated to Receiving Party by Disclosing Party through no fault of Receiving Party; (b) was rightfully in Receiving Party possession free of any obligation of confidence at or subsequent to the time such portion was communicated to Receiving Party by Disclosing Party; or (c) was developed by employees of Receiving Party independently of and without reference to any information communicated to Receiving Party by Disclosing Party. A disclosure of Confidential Information by Receiving Party, either: (a) in response to a valid order by a court or other governmental body; (b) otherwise required by law; or (c) necessary to establish the rights of either party under this Agreement, shall not be considered to be a breach of this Agreement or a waiver of confidentiality for other purposes; provided, however, that Receiving Party shall provide prompt prior written notice thereof to Disclosing Party to enable Disclosing Party to seek a protective order or otherwise prevent such disclosure.

5.    <u>HIPAA COMPLIANCE</u>: In the course of performing its obligations under this Agreement, Company may provide ARM with Protected Health Information (PHI), as that term is defined under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). If ARM receives PHI from Company, ARM shall use or disclose PHI that it receives from or creates for Company only as permitted or required by this Agreement or as otherwise required by HIPAA. ARM further agrees to follow the HIPAA regulations that are codified under Title 45 of the Code of Federal Regulations, at Parts 160 and 164, as they relate to a Business Associate, as the term is defined at 45 CFR 160.103.

6.    <u>Term</u>: This Agreement shall be effective on the date last signed below and shall remain effective for one (1) year. This Agreement shall renew automatically for additional one (1) year terms unless either party provides notice no later than thirty (30) days before the expiration of the then-current term. The parties acknowledge and agree that no Services will be provided unless there is a current, executed Description of Services.

7.    <u>Warranty and Disclaimer of Warranty</u>: ARM shall perform the Services in a professional and workmanlike manner. Company's sole and exclusive remedy for a breach of this warranty shall be to have ARM re-perform the Services or, in Company's discretion, to terminate this Agreement. OTHER THAN THE EXPRESS WARRANTY SET FORTH HEREIN, ARM HEREBY DISCLAIMS ALL OTHER EXPRESS OR IMPLIED WARRANTIES INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF NONINFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, AND MERCHANTABILITY.



8.     Termination and Effect of Termination:

    8.1 Termination. Either party may terminate this Agreement with or without a reason upon providing thirty (30) days prior written notice. In addition, either party may terminate this Agreement immediately upon a written notice if the other party breaches this Agreement and does not cure the breach within five (5) business days after receipt of the initial written notice that set forth the cause for termination.

    8.2 Effect of Termination. Upon termination of this Agreement for any reason, all outstanding amounts shall become immediately due and payable. In the event that any Description of Services, or this Agreement, is terminated, for any reason, prior to the completion of the project set forth in the Description of Services, then Company shall reimburse ARM for any material costs expended in connection with ARM' performance of the Services and also Company shall be responsible to remit to ARM all fees as set forth in the Description of Services through the effective date of the termination. ARM shall invoice Company for such fees promptly after the termination and such invoice shall be due and payable upon receipt.

    8.3 Retention and Return of Information. In accordance with ARM's company policy, ARM shall retain the information provided by Company to ARM in order for ARM to provide the Services for a period of three (3) years ("Client Files"). Such Client Files shall be treated as Confidential Information and in compliance with the terms of the Section Confidentiality. Upon request from Company and at Company's expense, ARM shall provide Company with a copy of the Client Files less any confidential notes within such Client Files.

    8.3 Survival. The rights and obligations in the following Sections shall survive any termination of this Agreement: 3 ("Compensation"), 4 ("Confidentiality"), 7 ("Warranty and Disclaimer of Warranty"), 8 ("Termination and Effect of Termination"), 9 ("Waiver of Consequential Damages and Limitation of Liability") 10 ("Non-Solicitation"), and 11("General Provisions").

9.     Waiver of Consequential Damages and Limitation of Liability: TO THE FULLEST EXTENT ALLOWED BY LAW, IN NO EVENT SHALL ARM BE LIABLE TO COMPANY OR ANY THIRD PARTY FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, WHETHER ALLEGED AS A BREACH OF CONTRACT, TORTIOUS CONDUCT OR OTHERWISE, INCLUDING WITHOUT LIMITATION NEGLIGENCE, ARISING OUT OF OR RELATED TO THIS AGREEMENT, EVEN IF ARM HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL ARM'S CUMULATIVE LIABILITY UNDER THIS AGREEMENT EXCEED THE AMOUNTS PAID BY COMPANY UNDER THIS AGREEMENT IN THE AGGREGATE DURING THE THREE-MONTH PERIOD PRIOR TO THE DATE THAT THE CAUSE OF ACTION AROSE.

10.     Non-Solicitation: Company understands and agrees that ARM's employees, consultants, and independent contractors are important and valuable to ARM. Accordingly, for a period of one (1) year after termination of this Agreement, Company agrees not to directly solicit, hire, retain or engage any of ARM's employees, consultants, or independent contractors who provided Services pursuant to this Agreement without ARM's prior written consent. In the event of such a breach, Company agree to compensate ARM in an amount equal to 30% of all compensation agreed, paid, and/or contracted with such ARM employees, consultants, and/or independent contractors for a twelve (12) month period. This sum is not a form of damages but rather a good faith approximation of the loss to ARM for Company's actions in hiring an ARM employee, consultant or independent contractor.



11. General Provisions:

11.1 Successors and Assigns. Neither party may assign its rights, subcontract or otherwise delegate its obligations under this Agreement without the other party's prior written consent.

11.2 Notices. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by telecopy or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt. Notice shall be sent to the addresses set forth above or to such other address as either party may specify in writing.

11.3 Governing Law. This Agreement shall be governed in all respects by the laws of the United States of America and by the laws of the State of California, as such laws are applied to agreements entered into and to be performed entirely within California between California residents. Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in California, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of such federal or state courts located in California, such personal jurisdiction shall be nonexclusive.

11.4 Severability. If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby.

11.5 Waiver; Amendment; Modification. No term or provision hereof will be considered waived by either party, and no breach excused by either party, unless such waiver or consent is in writing signed by such party. The waiver by a party of, or consent by the party to, a breach of any provision of this Agreement by the other party, shall not operate or be construed as a waiver of, consent to, or excuse of any other or subsequent breach by the party. This Agreement may be amended or modified only by mutual agreement of authorized representatives of the parties in writing.

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this Agreement on the dates set forth below.

COMPANY

By: _____
        Signature

Name: Edward G. McAndrew
         Print name

Title: SvP

Date: 9/3/15

ADVANCED RISK MANAGERS, LLC

By: _____
        Signature

Name: Mimi Cho
         print name

Title: President

Date: 9/3/2015



**Exhibit A**
**Description of Services**

This Description of Services by and between ARM and Company is deemed incorporated into, and is governed by, the Agreement by and between ARM and Company dated as of 8/24/2015. In the event of a conflict between this Description of Services and the Agreement, this Description of Services shall govern. Any capitalized term that is not defined herein shall have the meaning assigned to it in the Agreement.

This Description of Services sets forth the Services that ARM will provide to Company and sets out Company's obligations that are necessary so that ARM is able to perform such Services. Company hereby acknowledges and agrees that all analysis or recommendations provided to Company hereunder is provided in reliance upon data and information provided to ARM by Company and that ARM is not responsible for verifying the accuracy or completeness of any data or information provided by Company or for any materials, estimates or recommendations provided to Company that are based on such Company supplied data and information. The quality of ARM's Services is directly correlated to the quality of information that Company provides to ARM.

## I. ARMS SERVICES AND FEES

### A. Large Claims Management

- At company's request, ARM will manage catastrophic claims notifications and provide ongoing claims reserves evaluation.

- For transplant cases, ARM will provide the following:
    1. Assess general clinical and benefit appropriateness.
    2. If questionable clinical appropriateness or experimental treatment needs review, ARM will recommend independent medical review vendors to Company as ARM is not a medical review vendor.
    3. Review and compare transplant network contracts and make recommendations to Company and TPA/CM

- Review selected large claims for savings opportunities and/or applicable clinical appropriateness in relationship to plan benefits. Provide continuous vendor evaluation and initiation.
    1. Dialysis
    2. MVA
    3. Premature Births
    4. Oncology Cases
    5. Any other conditions that have large claims for management

- Promote/educate Cost Containment resources to TPAs and UR/CM companies.

- Serve as a resource to TPAs and UR/CM companies.

- **Fees:** These services are billed at $195/hour.

### B. Large Claims Integrity Review and Negotiation

- This service is focused on maximized claims savings and cost utilization through diligent large claims billing accuracy and appropriateness review.

- **Pre-payment Review and Negotiation**



1. Clinical reviewers will screen large claims for overbilling and potential billing errors.
2. Potential Triggers:
   - Billed charges over $100,000 with less than 10% PPO discount; or
   - Inpatient daily charges over $50,000; or
   - Implant charges over 50% of total billed charges; or
   - Pharmacy charges over 50% of total billed charges; or
   - Outpatient charges chemotherapy, infusion therapy, or dialysis charges over $50,000 per month.
3. Non-PPO claims
   - Billed charges trigger varies with each payor.
4. Review Negotiation
   - Upon completion of review, settlement will be negotiated and signed off by providers.

5. **Fees**: This service is billed at 28 % of contingency fees of net savings.

> **Post Payment Claims Review**

1. The clinician will review the charges as billed on the itemization to identify, but not be limited to:
   - Duplicates
   - Errors
   - Off label or experimental protocols
   - Excess of UCR of charges
   - Unbundling
   - Level of care / step down
   - Pharmaceuticals billed in excess of manufacturer's recommended dosages
   - No supporting diagnosis or surgical procedure for billed items
   - Quality of care concerns or hospital acquired conditions

2. Upon completion of the review, a review summary will be provided to Company.

3. Company acknowledges and agrees that ARM's review is strictly an overall bill review based on the completeness and accuracy of the information provided. The final claims adjudication and reimbursement decision is solely within Company's discretion and ARM shall not bear any liability for the application of Company's discretion.

4. **Fees**:
   - For internal claims reference only and no claims reduction will be applied, this service is billed at $195/hour.
   - When the review is used to facilitate post-payment adjudication, settlement, or resolution of the claim, this service is billed at 28% of net claims reduction savings.



### C. Miscellaneous Projects:
> As other projects and tasks arise, ARM will review such projects at the request of the Company. If the parties agree that ARM shall work on such project, then such project will be added to this Description of Services.

IN WITNESS WHEREOF, the duly authorized representatives of the parties have executed this Agreement on the dates set forth below.

COMPANY

By: _____
         Signature

Name: _Edward C McNamara_
              Print Name

Title: _SVP_

Date: _9/3/15_

ADVANCED RISK MANAGERS, LLC

By: _____
         Signature

Name: _Mimi Choi_
              Print Name

Title: _President_

Date: _9/3/2015_