UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED RISK MANAGERS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>EQUINOX MANAGEMENT GROUP, INC.,<br><br>    Defendant. | Case No. 19-cv-03532-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Defendant Equinox Management Group, Inc. ("Equinox") moves to dismiss Plaintiff Advanced Risk Managers, LLC's ("ARM") complaint. [Docket No. 15.] This motion is suitable for determination without oral argument. Civil L.R. 7-1(b). The December 19, 2019 hearing is vacated. Having considered the parties' submissions, Defendant's motion is denied for the following reasons.

## I. BACKGROUND

ARM makes the following allegations in the complaint, all of which are taken as true for purposes of this motion.[1] ARM is an insurance consulting firm based in San Francisco. It "reviews and evaluates insurance companies' business processes and audits their claims handling to identify cost savings for those companies." ARM's member is Mimi Choi, a California citizen. Equinox is an insurance company based in New Jersey. Compl. ¶¶ 4, 5, 8, 9.

In September 2015, ARM and Equinox entered into an agreement by which ARM agreed to provide certain consulting services for Equinox (the "agreement"). *Id*. at ¶ 10, Ex. A

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

(Agreement). These services included "manag[ing] certain catastrophic claims notifications, provid[ing] ongoing claims reserves evaluation, and perform[ing] large claims integrity review and negotiation, including identifying overbilling and potential billing errors, to maximize claims saving and cost utilization." *Id*. at ¶ 11. Under the agreement, Equinox agreed to pay ARM "28% of net claims savings when the review was used to facilitate post-payment adjudication, settlement or resolution of a claim." The parties agreed that ARM would bill Equinox for other services at $195 per hour. *Id*.

ARM performed the services under the agreement, including auditing 37 claims to identify overbilling and potential billing errors. ARM alleges that its audit "created savings in the amount of $8,812,123.71 for Equinox"; accordingly, "the potential net saving fees that Equinox owes to ARM is $2,467,394.64, which is 28% of the validated savings created by ARM's audit." *Id*. at ¶ 13. In November 2018, after completing its services under the agreement, "ARM contacted Equinox and requested that it provide the amount of net savings it achieved from using the audit of claims performed by ARM," in order for ARM calculate its fee rate of 28% of net savings and invoice Equinox. However, despite repeated requests, Equinox has refused to provide that information, thereby preventing ARM from calculating the amount it is owed. *Id*. at ¶¶ 14, 15.

On January 23, 2019, Equinox's attorney sent a letter to ARM's attorney noting Equinox's receipt of ARM's request for information "regarding the 'final outcome' for claims for which ARM provided its consulting services" under the parties' agreement in order for ARM to invoice Equinox. In the letter, counsel for Equinox states its position that ARM released Equinox from all claims that existed as of October 17, 2018, the effective date of a release agreement between Equinox, ARM, and third party Renaissance Reinsurance US Inc. ("Renaissance"). *Id*. at ¶¶ 16-17, Ex. B (Jan. 23, 2019 Letter). Counsel for Equinox wrote,

> [t]he Release Agreement between Equinox, Renaissance, ARM and Mimi Choi, which was effective October 17, 2018, released Equinox from all of ARM's claims that existed as of that date, including any claims of which ARM was unaware. . . . All of the claims on your client's spreadsheet pre-date the Release Agreement, and, thus, they were released and discharged by it. Those claims could not provide a basis for any additional invoices from ARM to Equinox, and ARM has no need for the information it has requested.

2

1  Accordingly, Equinox will not provide any information that it may have.

2  Jan. 23, 2019 Letter.

3  ARM disagrees with this assessment. It alleges that the release agreement that counsel cited in the January 23, 2019 letter involved a lawsuit by ARM against Renaissance for breach of an agreement between ARM and Renaissance "and had nothing to do with the Agreement between ARM and Equinox that is the subject of the present lawsuit." *Id*. at ¶ 18. According to ARM, its "present claims did not exist as of the effective date of the Release Agreement, and the parties did not intend for the Release Agreement to release and discharge any future claims that may arise out of the separate Agreement between ARM and Equinox that is the subject of this lawsuit." *Id*. at ¶ 18.

ARM filed the complaint on June 19, 2019, alleging four claims for relief against Equinox: 1) breach of the agreement between ARM and Equinox; 2) anticipatory breach of contract; 3) breach of the implied covenant of good faith and fair dealing; and 4) declaratory relief.

Equinox now moves to dismiss. It asks the court to consider certain materials outside the complaint, including the release agreement between Equinox, ARM, and Renaissance, and argues, among other things, that the materials show that ARM's claims in this lawsuit "fall squarely within the broad terms of the" release. Mot. 1.

## II. REQUESTS FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

In connection with its motion, Equinox asks the court to consider two documents under the incorporation by reference doctrine and to take judicial notice of eight documents. [Docket No. 14 (Request for Judicial Notice, "RJN").] ARM opposes the request in its entirety. [Docket No. 23.] As an initial matter, the court notes that the parties filed separate briefs regarding Equinox's request for judicial notice. Specifically, ARM filed a four-page opposition to the request along with its ten-page substantive opposition to the motion to dismiss. [Docket Nos. 21, 23.] Equinox filed an eight-page reply to ARM's opposition to the request for judicial notice in addition to its 13-page reply to ARM's opposition to the motion to dismiss. [Docket No. 26, 27.] These briefs violate Civil Local Rule 7-3, which provides that opposition briefs may not exceed 25 pages of text and reply briefs may not exceed 15 pages of text, and that "[a]ny evidentiary and procedural

3

objections to the motion [or opposition] must be contained in the brief or memorandum." Civ. L.R. 7-3(a), (c). The court will consider ARM's opposition to the request for judicial notice, because if its opposition brief had contained its objections, it would have stayed within the page limits. It declines to consider Equinox's eight-page reply brief in support of its request for judicial notice, which was filed in addition to a 13-page reply brief and takes Equinox's reply briefing well over the 15-page limit

### A. Legal Standard

A district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Both of these procedures permit district courts to consider materials outside a complaint, but each does so for different reasons and in different ways." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Ninth Circuit recently cautioned courts about the appropriate use of judicial notice and the incorporation by reference doctrine when ruling on Rule 12(b)(6) motions:

> The overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. . . . If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief. Such undermining of the usual pleading burdens is not the purpose of judicial notice or the incorporation-by-reference doctrine.

*Id.* (internal citations omitted).

Federal Rule of Evidence 201 governs judicial notice. Under Rule 201, a court may take judicial notice of "an adjudicative fact if it is 'not subject to reasonable dispute.'" *Id*. at 999 (quoting Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). While a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, it may not take judicial notice of disputed facts stated in public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). "Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. If a court takes judicial notice of a document, it must identify the specific fact or facts it is noticing from the document. *Id*.

In contrast, the incorporation by reference doctrine is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." *Id*. at 1002. This is to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions that weaken—or doom—their claims." *Id*. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. at 1002 (quoting *Ritchie*, 342 F.3d at 907). However, if a document "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id*. Further, "the mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id*. (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). The Ninth Circuit has instructed that "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id*. Thus, "while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6) . . . it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id*.; *see also id*. at 1014 ("The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.").

5

**B. Analysis**

**1. Judicial Notice**

Exhibits E, F, I, K are court filings in a lawsuit brought by ARM against Renaissance, to which the complaint refers at paragraph 18. Compl. ¶ 18 ("The Release Agreement involved a lawsuit that ARM brought against Renaissance for breach of an agreement between ARM and Renaissance . . ."). ARM filed a complaint against Renaissance in state court, which Renaissance removed to this court in January 2018. *See Advanced Risk Managers, LLC v. Renaissance Reinsurance U.S. Inc.*, No. 18-cv-00264-JST (N.D. Cal., removed Jan. 11, 2018) ("the *Renaissance* action"). While these court filings are judicially noticeable as matters of public record, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), that does not mean that "every assertion of fact within th[e] document[s] is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. Equinox does not identify the facts it asks the court to judicially notice from the filings and does not explain how such facts are "not subject to reasonable dispute" because they are either "generally known" within this court's jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). To the extent that Equinox seeks judicial notice of the existence of the lawsuit by ARM against Renaissance, the claims made in that action, and the fact that various documents were filed therein, the request is granted. It is otherwise denied as to any assertions of fact within the *Renaissance* action filings. *See Khoja*, 899 F.3d at 999.

Similarly, Equinox asks the court to take judicial notice of two documents that it claims were filed as exhibits to ARM's complaint in the *Renaissance* action: Exhibit G is a copy of ARM's 2017 agreement with Renaissance and Exhibit H is a copy of ARM's LHC Audit Invoice sent to Renaissance. RJN 6. As with the other filings in that case, Equinox does not identify the specific facts contained in the documents that it asks the court to judicially notice and does not explain how such facts satisfy the requirements of Rule 201. Accordingly, the court takes judicial notice solely of the fact that these documents were exhibits to ARM's complaint in the *Renaissance* action.

Equinox next asks the court to take judicial notice of portions of the deposition transcript

of Mimi Choi, ARM's member, as well as a document that it claims was referenced in Choi's deposition and was attached as an exhibit thereto. RJN Exs. J, L. The court denies the request as to Choi's deposition transcript. "[T]he content of a deposition is not a clearly established 'fact' of which [the court] can take notice." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 n.1 (9th Cir. 2010) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)); *see also Khoja*, 899 F.3d at 1000 (holding that district court abused its discretion by judicially noticing an investor call transcript; "[i]t is improper to judicially notice a transcript when the substance of the transcript 'is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes."). As to the document attached to the deposition transcript, Equinox offers no explanation or argument as to how this document satisfies the requirements of Rule 201. Judicial notice of the document is accordingly denied.

### 2. Incorporation by Reference

Equinox also asks the court to consider two documents that it argues are incorporated by reference into the complaint. First, it asks the court to consider Exhibit C, an email chain from November-December 2018. According to Equinox, the emails in the chain reflect the "repeated requests" ARM made to Equinox for "the amount of net savings [Equinox] achieved from using the audit of claims performed by ARM," as alleged in paragraph 14 of the complaint. The relevant allegations from the complaint are as follows:

> In November 2018, after ARM completed its services as requested by Equinox under the Agreement, ARM contacted Equinox and requested that it provide the amount of net savings it achieved from using the audit of claims performed by ARM, in order for ARM to prepare its invoices to Equinox. . . . Despite repeated requests, Equinox has failed and refused to provide the net savings information thereby preventing ARM from calculating the amount of service fees (28% of the net savings) that Equinox owes to ARM for the claims audited by ARM.

Compl. ¶¶ 14-15. The email chain is not incorporated by reference into the complaint. The complaint references contacts between ARM and Equinox and ARM's "repeated requests" for information from Equinox, but it does not refer to the form of these contacts and requests and does not mention emails, let alone "refer[ ] extensively" to them. Further, the complaint's brief references to the contacts do not make them the "basis of plaintiff's claim." *See Khoja*, 899 F.3d

7

at 1002.

Equinox next asks the court to consider Exhibit D, which it states is a release agreement between ARM, Choi, Renaissance, and Equinox dated October 17, 2018. It argues that the release agreement is incorporated into the complaint by the complaint's reference to it at paragraph 17, which states:

> In the January 23, 2019 Letter from Equinox, counsel for Equinox refers to a Release Agreement between Equinox, [Renaissance] and ARM that was effective October 17, 2018. As set forth in this letter, Equinox is taking the position that ARM released Equinox from all claims that existed as of the effective date of the Release Agreement, including any claims of which ARM was unaware. . . .

Compl. ¶ 17. The release agreement is not incorporated by reference into the complaint, as the complaint does not "refer[ ] extensively" to the release agreement. Moreover, the release agreement is not the "basis of plaintiff's claim," *see Khoja*, 899 F.3d at 1002, because ARM's claims are based upon its alleged agreement to provide consulting services for Equinox. *See* Compl. ¶¶ 10, 20-27, 29, 37. Instead, the release agreement "creates a defense to the well-pled allegations in the complaint," *Khoja*, 899 F.3d at 1002, a defense that ARM expressly alleges and disputes in the complaint:

> Equinox contends that the claims services provided by ARM pursuant to the Agreement have therefore been released and discharged [by the release agreement]. . . . ARM disagrees that it released and discharged its present claims for amounts due under the Agreement in connection with the Release Agreement between Equinox, Renaissance and ARM. The Release Agreement involved a lawsuit that ARM brought against Renaissance for breach of an agreement between ARM and Renaissance and had nothing to do with the Agreement between ARM and Equinox that is the subject of the present lawsuit. . . .

Compl. ¶¶ 17-18. Indeed, the defense purportedly created by the release agreement is the primary basis for Equinox's motion to dismiss, *see generally* Def.'s Mot., and appears to be the key disputed issue in the lawsuit. Resolution of that issue is inappropriate at this stage. *See Khoja*, 899 F.3d at 1003 (noting that its admonition that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint" is "consistent with the prohibition against resolving factual disputes at the pleading

stage."). Accordingly, the court declines to consider the release agreement.[2]

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee*, 250 F.3d at 679.

## IV. DISCUSSION

As noted, Equinox moves to dismiss the complaint on the ground that under the terms of the October 17, 2018 release agreement between ARM, Choi, Renaissance, and Equinox, ARM released the claims at issue in this lawsuit. It also argues that ARM is judicially estopped from asserting that its claims arose after the effective date of the release agreement; that the complaint does not allege sufficient facts to infer that ARM's claims arose after October 17, 2018, the effective date of the release agreement; and that this action is barred by res judicata because ARM could have brought its claims against Equinox in the *Renaissance* action. Each of these arguments relies upon material outside the complaint that the court has declined to consider for purposes of

---

[2] The court notes that ARM submitted a declaration by Choi with its opposition to the motion to dismiss. [Docket No. 22.] The declaration is neither judicially noticeable nor incorporated by reference in the complaint. Accordingly, the court does not consider it in ruling on this motion.

adjudicating this pleading motion.  *See* Def.'s Mot. 6-17 (citing RJN Exs. C, D, J, L).  Specifically, Equinox's argument that ARM released its claims against Equinox in the release agreement is based upon the release agreement and its interpretation thereof, as well as Choi's purported deposition testimony about ARM's work under a 2015 contract.  *Id*. at 6-9.  Its judicial estoppel argument similarly rests on the release agreement and Choi's testimony.  *Id*. at 9-11.  Equinox's argument that the complaint does not allege that ARM's claims arose after October 17, 2018 is based on the release agreement and the email chain between the parties, *id*. at 11-14, and its res judicata argument is based on Choi's testimony, *id*. at 14-17.  None of Equinox's arguments in favor of dismissal are confined to the four corners of ARM's complaint.  Given the court's ruling on judicial notice and the incorporation by reference doctrine, the motion to dismiss is denied.  This denial is without prejudice to renewal of these arguments on a full record at summary judgment.

## V. CONCLUSION

For the foregoing reasons, Equinox's motion to dismiss is denied.  The December 19, 2019 case management conference is vacated and continued to February 5, 2020 at 1:30 p.m.  The parties shall file an updated joint case management conference statement by January 29, 2020.

**IT IS SO ORDERED.**

Dated: December 10, 2019



Donna M. Ryu
United States Magistrate Judge