UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADVANCED RISK MANAGERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EQUINOX MANAGEMENT GROUP, INC.,<br><br>Defendant. | Case No. 19-cv-03532-DMR<br><br>**PRETRIAL ORDER** |

Following the pretrial conferences held on February 9, 2022 and February 16, 2022, the court sets forth its pretrial rulings below to summarize its rulings from the bench.

## I. CONDUCT OF TRIAL

**Trial Schedule:** Jury selection in this case will begin on February 22, 2022 at 9:00 a.m. Counsel must arrive by 8:00 a.m. every morning. Counsel shall be prepared to stay as needed after the jury leaves for the day. The trial schedule for the jury will be from 8:30 a.m. to 1:30 p.m. with two fifteen-minute breaks, except that on the first day, the court anticipates excusing the jury around 3:30 p.m. Trial time is limited to 14 hours (seven hours for each side). The trial time clock will begin as soon as the jury is seated for the day and will only be stopped for the two breaks until the jury departs for the day. Time spent waiting for a witness will be charged against the side who is presenting evidence. In addition to the 14-hour limit, each side has 15 minutes for an opening statement, 15 minutes for voir dire, and 30 minutes for closing arguments; Plaintiff may reserve time for closing argument rebuttal.

**No Sidebars:** Sidebars are not permitted. Counsel must make best efforts to anticipate issues and raise them before the jury arrives, during one of the breaks, or after the jury departs for the day.

1  **Objections:** Please stand to make an objection.  Do not make speaking objections or offer argument.  State the rule or basis for the objection (e.g., "403," or "hearsay").  Do not offer a rebuttal unless requested.  If requested, rebuttal must be brief (e.g., "not offered for the truth.").

**Witnesses:** No witness may testify unless they have been identified in the pretrial submissions, except for true rebuttal or impeachment witnesses upon a showing of good cause.  The party presenting evidence must give the other party 24-hour written notice of the witnesses to be called.  Counsel are expected to work together to accommodate witness schedules and to avoid cumulative testimony.  If a witness will be called out of order, counsel are expected to bring it to the court's attention in advance.  No witness may be in the courtroom while not testifying except for party representatives Mimi Choi and Edward McAndrew.

**Covid-19 protocols**:  All courtroom occupants shall maintain social distancing at all times.  All courtroom occupants shall wear masks at all times.  Witnesses shall wear clear masks which will be provided by the court.  Attorneys must wear masks while presenting evidence and argument.  Attorneys shall question witnesses from counsel table.

**Exhibits:** No exhibit may be used unless it has been identified in the pretrial submissions except for true rebuttal or impeachment exhibits upon a showing of good cause.

**Deposition Transcripts:** Any party intending to use a deposition transcript at trial for any purpose shall lodge the signed original (or a certified/stipulated copy if, for any reason, the original is not available) at the beginning of the trial for use by the court and shall have extra copies available for use by the party and the witness.  All other parties are expected to have their own copies available.

**Settlement:** The parties must promptly notify the court of a settlement by sending an email to **DMRsettlement@cand.uscourts.gov**.  The email shall set forth all remaining steps to finalize the settlement.  The settlement email must be received no later than 4:00 p.m. on February 18, 2022 to avoid the assessment of jury costs.  Civ. L.R. 40-1.

**Compliance with Orders of the Court, including Orders on Motions in Limine:** Failure to comply with the obligations set forth in any court order, either written or oral, will result in sanctions appropriate to the gravity of the failure, including, but not limited to monetary fines

1    and/or terminating sanctions.  Counsel are personally responsible for making sure that the court's

2    orders, including rulings on motions in limine, are clearly communicated to clients and witnesses

3    so that the presentation of evidence complies with those rulings in every respect.  Failure to

4    comply with a ruling may result in sanctions, including but not limited to the striking of the

5    witness's entire testimony.

6    **II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

7           Plaintiff's motion for leave to amend the complaint to add claims for fraudulent

8    concealment and punitive damages is denied.  [Docket No. 139.]  As stated on the record, Plaintiff

9    has not shown good cause for the amendment.  Plaintiff was not diligent in seeking amendment

10   and unduly delayed in moving to amend the complaint on January 14, 2022, one year after the

11   close of discovery and one month before trial.  Although Plaintiff claims that it did not move to

12   amend earlier because Defendant engaged in discovery misconduct, the evidence submitted with

13   Plaintiff's motion (Choi's declaration) does not establish that Defendant acted in bad faith or was

14   dilatory or obstructionist in responding to discovery, and Plaintiff never raised any discovery

15   disputes with the court.  Finally, allowing amendment so close to trial would result in substantial

16   prejudice to Defendant because Plaintiff seeks to add new theories that would require significantly

17   different discovery.

18   **III.   PLAINTIFF'S MOTIONS IN LIMINE**

19          **A.    Motion in Limine No. 1**

20          Plaintiff's motion in limine no. 1 is titled, "Motion to Exclude Evidence Relating to the

21   Accuracy of Underwriting Data as a Reason for the Geisinger Settlement."  [Docket No. 156.]

22   This title is a misnomer, as the parties agree that the motion raises a question of contract

23   interpretation as to the term "used to facilitate post-payment adjudication, settlement, or resolution

24   of the claim" in the payment provision in the parties' agreement.  Neither party argued that this

25   provision was ambiguous, nor offered a particular interpretation to which the provision was

26   reasonably susceptible or extrinsic evidence to support that interpretation.  Accordingly,

27   construction of the provision is a question of law for the court, not the jury.  *See Producers Dairy*

28   *Delivery Co. v. Sentry Ins. Co.*, 41 Cal. 3d 903, 912 (1986) ("[w]hether language in a contract is

1  ambiguous is a question of law."); *Winet v. Price*, 4 Cal. App. 4th 1159, 1166 (1994) ("when no
2  parol evidence is introduced (requiring construction of the instrument solely based on its own
3  language) or when the competent parol evidence is not conflicting, construction of the instrument
4  is a question of law"); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006) ("[i]f,
5  after considering the language of the contract and any admissible extrinsic evidence, the meaning
6  of the contract is unambiguous, a court may properly interpret it on a motion for summary
7  judgment."). Based on the plain meaning of the words "used to facilitate," the court construes the
8  term to mean "used to help achieve post-payment adjudication, settlement, or resolution of the
9  claim." Neither party objected to this construction.

10  To the extent that Plaintiff seeks to exclude all testimony, argument, and evidence about
11  the reasons for the Geisinger settlement, the motion is denied on the ground that such evidence is
12  relevant to whether Plaintiff's review was "used to help achieve" the settlement based on the plain
13  language meaning of that term, as construed by the court. Any testimony about the reasons for the
14  settlement is permissible as long as it is based on admissible evidence; that is, based on the
15  witness's personal knowledge. However, no witness will be permitted to testify as to the ultimate
16  factual issues for the jury. For example, witnesses may not testify about whether or what was
17  "used to facilitate" settlements or "help achieve" settlements, nor may they characterize events as
18  "causing" or "facilitating" settlement, or words to that effect. Witnesses may testify to the
19  underlying facts. The jury must make the ultimate factual determinations.

20  **B.     Motion in Limine No. 2**
21  Plaintiff withdrew motion in limine no. 2. [Docket No. 157.]

22  **IV.    DEFENDANT'S MOTIONS IN LIMINE**
23  **A. Motion in Limine No. 1**
24  Defendant moves to preclude Plaintiff from introducing, mentioning, or referring to
25  evidence or argument that it is entitled to payment of both an hourly rate and 28% of net claims
26  reduction savings for its claim review work. [Docket No. 140.] The motion is denied as moot, as
27  Plaintiff agrees that it will not argue that it is entitled to payment under both fee provisions.
28  Plaintiff further agrees that if the jury finds that Plaintiff establishes that it is entitled to payment

4

1  under the 28% of net claims reduction savings provision, any amount the jury awards must be
2  reduced by the amount of money Plaintiff has already been paid under the hourly fee provision.
3  The verdict form and jury instructions will reflect this required offset.

      **B.**      **Motion in Limine No. 2**

Defendant moves to exclude Plaintiff from introducing, mentioning, or referring to evidence or argument that the parties' agreement permits Plaintiff to recover 28% of the potential billing errors it claims to have identified in its audits. [Docket No. 141.] This motion raises a question of contract interpretation regarding the meaning of "net claims reduction savings." Neither party argued that this provision was ambiguous, nor offered a particular interpretation to which the provision was reasonably susceptible or extrinsic evidence to support that interpretation. Therefore, the court construes the provision as a matter of law. *See Producers Dairy*, 41 Cal. 3d at 912; *Winet*, 4 Cal. App. 4th at 1165; *Miller*, 454 F.3d at 990. As stated on the record, the court concludes that "net claims reduction savings" must be read to mean "final amount of money saved by reducing the monetary value of the claims." Neither party objected to this interpretation.

Accordingly, the court rules as follows, and will give limiting instructions as appropriate. Plaintiff is strictly prohibited from arguing or presenting evidence to suggest that it is entitled to the potential savings it identified, or that its damages should be calculated in relation to the potential savings that it identified. Plaintiff is permitted to introduce evidence of the potential savings that it identified in order to challenge the reliability or credibility of what Defendant has identified as its net claims reduction savings, or the allocation of those savings.

      **C.**      **Motion in Limine No. 3**

Defendant moves to exclude evidence of alleged fraud and concealment. [Docket No. 142.] Given the court's denial of Plaintiff's motion for leave to amend, Defendant's motion in limine no. 3 is granted to the extent that Plaintiff seeks to introduce evidence about alleged discovery misconduct and/or Defendant's alleged failure to disclose to Plaintiff the true amount of savings it achieved as a result of the Humana and Geisinger settlements.

The court held in abeyance the portion of Defendant's motion in limine no. 3 regarding Plaintiff's contention that the allocation of savings for the Geisinger settlement was expressed

1  differently as to third party Summit Re.  It ordered the parties to meet and confer regarding any

2  evidence supporting such a contention and Defendant's argument that Plaintiff should be

3  precluded from offering this contention at trial under FRE 403.  [*See* Docket No. 190 (Minute

4  Order).]  The parties were unable to reach an agreement and filed briefs on this issue.  [Docket

5  Nos. 206, 208.]  At the second pretrial conference, Plaintiff clarified that it will not argue at trial or

6  present evidence that the allocations that Defendant and RenRe used internally for the Geisinger

7  settlement were reported differently to Summit Re.

The court will allow Plaintiff to introduce evidence of communications to, from, or about Summit Re for at least the following purposes: 1) to show that Plaintiff worked on certain claims; 2) to show that Plaintiff's work was used to help achieve resolution; and 3) to show how Defendant and/or RenRe characterized how they achieved savings on claims.  Defendant did not object to the use of evidence related to Summit Re for these purposes.

Plaintiff also raised for the first time the so-called "Summit Re creative savings theory." The court ordered Plaintiff to file a brief setting forth in detail its theory, including identifying with particularity any evidence supporting such a theory.  The court also ordered Defendant to file discovery responses along with any argument supporting their position that the court should disallow evidence or argument related to the Summit Re creative savings theory at trial on the ground that it was requested but never disclosed prior to the pretrial process.  [Docket No. 209.] Plaintiff timely filed the requested brief explaining that it is withdrawing the Summit Re creative savings theory and will not present it at trial.  [Docket No. 212.]

## V. OBJECTIONS TO WITNESSES

**Kira Sturgis:** withdrawn by Plaintiff.

**James Conway:** withdrawn by Defendant.

**Mimi Choi:** The parties met and conferred about Defendant's objection to Choi's testimony "to the extent [Plaintiff] intends to have her offer improper expert testimony."  [Docket No. 161.]  As stated on the record at the second pretrial conference, the parties agree that Choi may offer opinion testimony as a lay witness pursuant to Federal Rule of Evidence 701 to the extent that her testimony is based solely on her personal experience and percipient knowledge.

## VI. EXHIBITS

### A. Plaintiff's Exhibits

#### 1. Exhibit 10

Exhibit 10 is an email chain. Plaintiff seeks to admit only four of the emails in the chain. Each of the four emails at issue is from Samantha Engel, a RenRe employee, to Robert Black of Aon. In the email chain, Engel and Black discuss the Geisinger T.F. claim, as well as an issue with Geisinger's "underwriting materials." Whether Plaintiff performed work on the T.F. claim and/or audited the T.F. claim is disputed by Defendant. [*See* Docket No. 206 at 4.] Further, Plaintiff disputes Defendant's contention that it settled the Geisinger claims based on an issue with Geisinger's underwriting materials. Accordingly, the four emails are relevant to the claims and defenses in this action, and the probative value of the emails outweigh any unfair prejudice to Defendant. Therefore, Defendants FRE 401-403 objections are overruled.

Plaintiff seeks to use the remaining emails in the chain only to refresh Engel's recollection and not for admission into evidence. [Docket No. 219.] Accordingly, any objections to those emails are denied as moot, including Defendant's FRE 801 hearsay objection to the emails by Black.

#### 2. Exhibit 21

Defendant's FRE 401 and 403 objections are overruled, as the exhibit is relevant to Plaintiff's breach of covenant claim, anticipatory breach of contract claim and the accrual of its claims. Any potential prejudice to Defendant is outweighed by the probative value of the exhibit. Defendant's FRE 602 objection is overruled, as Norbert Phillips was copied on the letter and has adequate personal knowledge to authenticate it. Defendant's FRE 801 objection is overruled; the exhibit is admissible as an opposing party's statement under FRE 801(d)(2)(D). *See United States of Am., Plaintiff, v. Jamie Harmon, Defendant.*, No. CR 08-00938 JW, 2010 WL 11519181, at *2-3 (N.D. Cal. July 1, 2010) (holding that "an attorney is the agent of her client for all matters within the scope of representation" and that letter by defendant's attorney was admissible under FRE 801(d)(2)(D) as "adoptive admissions of a party opponent").

### 3. Exhibit 43

Defendant's FRE 602 objection based on lack of personal knowledge is sustained.

### 4. Exhibit 44

Defendant's FRE 602 objection based on lack of personal knowledge is sustained.

### 5. Exhibit 53

Exhibit 53 is an email chain. Plaintiff submitted a revised version of Exhibit 53 which consists of emails from Norbert Phillip, an Equinox employee, to third parties. The emails are relevant to Plaintiff's contention that its work was "used to facilitate post-payment adjudication, settlement, or resolution of" a claim. Defendant's FRE 602 and FRE 801 lack of personal knowledge and hearsay objections are overruled as to this email; since Phillips wrote the emails, he has personal knowledge of them, and the emails are admissible as an opposing party's statement under FRE 801(d)(2)(D).

### 6. Exhibit 62

Plaintiff confirmed that if the court does not permit it to proceed with the Summit Re creative savings theory, it would withdraw Exhibit 62. As noted above, Plaintiff has withdrawn that theory. Accordingly, Defendant's objections to Exhibit 62 are denied as moot and the exhibit may not be offered at trial.

### 7. Exhibit 66

Defendant objected based on FRE 401-403 and FRE 801. The court overruled the objections, subject to a limiting instruction that Plaintiff may introduce Exhibit 66 only for the purpose of challenging the reliability or credibility of what Defendant has identified as its net claims reduction savings, or Defendant's allocation of those savings. Exhibit 66 may not be introduced as evidence of Plaintiff's damages.

## B. Defendant's Exhibits

### 1. Exhibit A

Plaintiff's FRE 403 objection is overruled. Defendant may introduce Exhibit A if a witness with personal knowledge lays an adequate foundation to establish that the agreement governed the relationship between Defendant and RenRe.

### 2. Exhibit LL

The court will take further oral argument on Exhibit LL on February 22, 2022 at 8:00 a.m.

### 3. Exhibit RR

Plaintiff's FRE 602 objection based on lack of personal knowledge is sustained.

### 4. Exhibit BBB

Plaintiff's FRE 602, FRE 801, and FRE 403 objections are overruled. Engel created the exhibit and has personal knowledge of the exhibit. Exhibit BBB is admissible as a "summary, chart, or calculation to prove the content of voluminous writings" under FRE 1006, and is based on data from other exhibits to which Plaintiff did not object.

### 5. Exhibit CCC

Plaintiff's FRE 602, FRE 801, and FRE 403 objections are overruled. Engel created the exhibit and has personal knowledge of the exhibit. Exhibit CCC is admissible as a "summary, chart, or calculation to prove the content of voluminous writings" under FRE 1006, and is based on data from other exhibits to which Plaintiff did not object.

**IT IS SO ORDERED.**

Dated: February 18, 2022



Donna M. Ryu
United States Magistrate Judge